OPINION OF THE COURT
Delivered by the
Honorable Powhattan Ellis.
From an examination of the papers in this case, it appears that the complainants, Robert Davis, Lewis Davis, Susannah Guartly and Martha McCausland are the heirs and legatees of Lewis Davis, dec’d. The complainants state, that the said Lewis Davis, dec’d. “did, on or about the 3d of February 3784, make his last will and testament, making certain devises therein specified, and soon after the execution of his will, departed this life. The complainants further state, “that the said testator at the time of his death was possessed of a considerable personal estate, all of which, Martha Davis the widow of the testator, after his death, reduced into possession, and continued in possession thereof, until the year 1790, at which time, said Martha intermarried with one Patrick Foley, of the county of Wilkinson, who thereupon took possession, of said estate, in right of *44 his wife, and continued in'possession until the’14th of May 1794, at which time a partial division took place, in pursuance of a decree of the Govern- or of the district of Natchez for thar purpose; — but the Complainants set out in their bill, that the defendant Foley did not account to them in pursuance of the. will of the said testator, which he was in conscience bound to do, as he could not legally or equitably hold that property, which the widow of the testator held subject to express conditions named in the will pf the said testator, and by virtue of which she came into the possession of the property.
The defendant in his answer, denies all the material allegations set forth in the complainants bill.
, At a superior court of law and Equity in Wilkinson county, November term 18.13, this cause came on to be heard, and an interlocutory decree was obtained, ordering the defendant to account, and auditors were appointed for that purpose, who were to meet at a certain time and place— the party convening them, to give the opposite party ten days notice of the time and place of meeting. The complainants, gave the’defendants notice, of the time and place pf the meeting of the auditors — and they proceeded to take the account between tha parties and reported the same to the court below, in conformity to the decree — to which report the defendants counsel excepted. At November term 1814, this cause was transferred to the Supreme Court of the territory for adjudication.
I have taken this view of the case, in order that the court may see the grounds upon which the interlocutory decree was founded, not that 1 deemed it material, because the court conceives itself confined to the exceptions taken to the report of the auditors. The merits of-the case will not be touched.
Inthe first place, it is contended by defendants counsel, that the report of the auditors, is irregular and illegal and ought to be set aside. “Because John R. Holliday, one of the auditors named in the decree to account, was not duly uotified by thejcomplainants, (who convened the auditors) of the time and place of the first- meeting of the auditors'or of the several times and places to which they thereafter adjourned, and that said J. R. Holli-day, never attended any of the meetings of the auditors for that reason. This objection, it is. contended by the complainants cannot be sustained, *45 because the report was taken and made in strict conformity to the decree, the only source whence the auditors derived their power. By referring to the decree, the court discovers, after the general order to account — "that John R. Holliday, John B. Posey and Duncan Stewart, Esq. be, and they are hereby appointed auditors to take said account, they or a majority of them, and that they, or a majority of them, report in writing to the next term of this court the balance due on said account. It is not contended that the defendant had not legal notice of the time and place of the meeting of the auditors, and as to the circumstance, of the absence of John R. Holliday, one of the auditors mentioned in the decree to account, the court is of opinion, that this will not vitiate the report, because the other two auditors did not travel out of the limits of that power delegated to them by the interlocutory decree, authorizing so many persons, or a majority of them, to do such an act, without stating or requiring that each one of the auditors should have notice of the time and place of their first meeting. If the court had have intended that each one of the auditors should have notice before the others could proceed to take the account, it would have been mentioned in the body of the decree. But suppose notice to have been an indispensible requisite, before the auditors could legally proceed to the discharge of their duties; we are of opinion, that it is too late to except to proceedings here, which should have been objected to before the auditors: — Having disposed of this preliminary question, the court will take into consideration the exceptions to the report of the auditors generally, and will consider them in two points of view: — First; is it competent for a party in filing exceptions to the report of auditors to impugn a decree of the court?
Secondly — Can exceptions to the report of auditors unless they were made and overruled before said auditors, and certified to the court be sustained?
First, is it competent for a party filing exceptions to the report of auditors, to impugn a decree of tne court?
It is an undeniable and well established principle in Chancery proceedings, “nothing can be pleaded before auditors, contrary to what has been pleaded before, and which has been found by verdict; because i.t would introduce either a contrary verdict, or two verdicts of the same kind, which is absurd. All the cases when-the pleas have been rejected before *46 auditors, were, because they might have been pleaded in bar; you shall not lie by and plead before auditors, what you might have before pleaded in bar. 3 Wilson Reports, 114 the case of Godfrey vs. Saunders.— By the will of the testator it appears,' that after all just debts have been liquidated, and all the specific legacies satisfied, the real and .personal estate, not otherwise disposed of, shall pass into the possession of the widow of the testator, to be equally divided between her and the four legatees as they respectively become of age, and it was upon this devise, that the Spanish decree of the 16th of January 1794 was founded, in favor of the heirs of the testator, and when the cause came on to be heard, at the superior court of Law and Equity for the county of Wilkinson, the interlocutory decree rested upon the same ground, with instructions to the auditors, to make the Spanish decree of the 16th January 1794, the basis of their report, which devise gives to the widow and legatees an equal portion of the land and negroes not specifically devised. When the auditors met in pursuance of their authority, they proceeded to take the account as directed, and reported accordingly.
From our examination of the exceptions, I find, that the sixth, seventh and ninth are in opposition to the rule already laid down :• — they are as follows:
6th. Because in the said report, each of the heirs is allowed a propor. tion of the use of the whole plantation, whereas, by law, they are not entitled at any rate to a proportionate use but of the half of said plantation.
7th Because, the auditors did not take into consideration the rightful ¡claim of the children of said defendant and his wife, to their mothers es_ tate, against the said pomplainants, but allowed every thing to the said complainants wife.
9. Because, the- said auditors have decided that the defeudant was bound to pay rent for said plantation, and here predicated their calculations on that principle, when by law he was not so bound. It is only necessary to referió the Spanish decree (upon which the interlocutory decree below is founded) to see that the exceptions already mentioned are in ¡express contradiction to it, which says that the widow of the testator, .and the former legatees, shall be entitled to an equal portion of all the real and personal estate not specifically devised. If this be a correct stater *47 unent of the case as appears of record, how is it possible for the court to sustain the exceptions mentioned, unless it violates that salutary principle of the law, which was resorted to, to avoid the many inconveniences and absurdities mentioned in the rule itself?
Secondly: — Can exceptions to the report of auditors be sustained, unless they were made and overruled before said auditors, and certified to the court as a part of the Report.
By a reference to the authorities in relation to the second point, the court finds but little difficulty in giving its opinion, from the clearness and precision of the law, as laid down in all the books we have looked into. I find the doctrine of reports in Blakes Chancery practice, page 256 which states — when the draft of the report has been duly considered, and either of the parties is prepared to attend the master thereon, he may take out a summons underwritten, to settle the draft of the masters report, upon which attendance, if either of the parties conceive that the interest of his client has not been properly attended to, or that the master has erred in making up his report, he must bring in objections in writing to the report. See 2 Mad. 388 — Blakes Chancery 223 and the case of Renison vs. Remson 2 John’s. Ch'y. Rep’ts. 502. But if no objections are brought in, the master will settle the report, and return it in due form according to directions. And further, if a party neglects to b -ing in objections to a masters report, he cannot afterwards except to it, but is confined to such objections as were overruled or disallowed by the master. See Newland 172 — 2 Mad. 389 and the cases before cited.
From this exposition of the law, it evidently appears, that the defendant has foiled in every essential requisite before the auditors, to entitle him to protection under the exceptions he took to their report — and as this is is the case, the court deems it unnecessary to set out the other exceptions filedby defendants counsel. The practice which should be observed by our commissioners and auditors in this country, ought to be in strict conformity to the practice of the master in England, because we profess to be governed by the same rules and laws, unless the intervention' of a statutory provision supercedes the obligation of the common law.
The practice to take exceptions at the time of making up the report, has not been heretofore pursued in this state in every instance. But heireaP ter, it is expected the rule will not be departed from.-
The system of equity jurisprudence in this state, has been greatly improved, by the labors and assiduity of the present able Chancellor of Mississippi, and by various statutory enactments. The great delay, which is the reproach of the Chancery Courts of England, exists to a less extent in this state, and it is hoped, that the improvement here, in this respect, will be progressive. The most striking objection to Chancery Courts, is, the delay produced, and expense incurred, in the trial of cases in equity, that have heretofore been tried at common law. It strikes the mind, as a singular anomaly, that one court should be constituted to try causes upon technical principles, precluding an investigation of the merits of such cases, and required to' render judgments contrary to justice, and that another tribunal must be organized, to retry these same causes, and pronounce a wholly opposite decree. Thus, it has been decided, that if A sells a tract of land to B, with general warranty of title, and there should be an ascertained failure of title to a part of the land, nevertheless, that A can obtain a judgment in the courts of common law, for die whole amount of the purchase money, and B be required to resort io a court of equity for relief, and the case be probably remanded to a jury, under the direction of the same common law court, to ascertain the extent of the injury sustained by the partial failure of title, which verdict, would probably govern the Chancellor in his decree. Now, wherefore, the necessity of this delay and expense, and why not permit a jury in the first instance, to investigate the facts, and render a verdict conformable to justice? other analogous cases might be cited, in which great delay is produced, and expense incurred, by denying to the courts of common law, the power to investigate the merits of the case. In Louisiana, and other countries where the civil law prevails, the merits of the cases are investigated and determined in one court: There seems to be no insuperable obstacle to the adoption of üiavc forms of administering justice, without incorporating into our system their principles of jurisprudence. This has in fact been accomplished in several of the states of the American Union, by extending the powers of the common law courts, so as to enable them to decide upon equitable principles. The chancery system, arose in England, from the technialjties introduced into the courts of common law. But wherefore the necessity of introducing these technicalities, or why not remove them in this as in several other states of this Union, by extending the powers of the common law courts, so as to investigate at once the merits of the case? The framers of the constitution of this state have decided differently, and it therefore becomes the.duty of all, to co-operate in rendering our present chancery system, as perfect as possible, and if causes must be tried and decided upon their demerits' first, and their merits afterwards, it is certainly advisable, that the tribunals which pro-nbunce these opposite decrees, should be separate.
The court, from the whole view of the case, taking into consideration that the Spanish decree of the 16th January, 1794, was made the basis of the report of the auditors, are of opinion, that this report is just and equitable. The exceptions to the report must he overruled and the Cause remanded to Wilkinson county for trial.